UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES NEWMAN, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, <br> Commissioner of Social Security <br><br> Defendant. | No. EDCV 11-512 AGR <br><br> MEMORANDUM OPINION AND ORDER |

     Plaintiff James Newman filed this action on April 7, 2011. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge on April 20 and 29, 2011. (Dkt. Nos. 8, 10.) On December 5, 2011, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

     Having reviewed the entire file, the court reverses the decision of the Commissioner and remands this matter for proceedings consistent with this opinion.

# I.

# PROCEDURAL BACKGROUND

On May 15, 2007, Newman filed an application for supplemental security income, alleging an onset date of November 7, 2006.[1] AR 9, 117-19. The application was denied initially and upon reconsideration. AR 9, 71-72. Newman requested a hearing before an ALJ. AR 84. On May 28, 2009, the ALJ conducted a hearing at which Newman and a vocational expert ("VE") testified. AR 19-56. On November 20, 2009, the ALJ issued a decision denying benefits. AR 6-18. On March 10, 2011, the Appeals Council denied the request for review. AR 1-4. This action followed.

# II.

# STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than

---

[1] Newman previously sought disability insurance benefits and supplemental security income in applications dated July 24, 2001 and January 5, 2004, alleging an onset date of July 17, 1999. Administrative Record ("AR") 60. The applications were denied initially, upon reconsideration, and after hearings by separate Administrative Law Judges ("ALJ"). *Id.* As noted by the current ALJ, Newman's alleged onset date in his application at issue is the day after the second ALJ's decision denying benefits on November 6, 2006. AR 21-22, 70.

one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

## III.
## **DISCUSSION**

### A.  Disability

A person qualifies as disabled and is eligible for benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B.  The ALJ's Findings

The ALJ found that Newman has the severe impairments of asthma, degenerative disc disease of the cervical spine, arthritis of the neck and shoulders, low back pain, organic mood disorder, personality disorder, and depression.  AR 11.  He has the residual functional capacity ("RFC") to perform light work.  AR 12.  The ALJ adopted the limitations from the November 6, 2006 decision:

> [T]he claimant can stand and/or walk six hours out of an eight-hour work
> day and sit for six hours with normal breaks every two hours; [t]he claimant
> can lift and/or carry 20 pounds occasionally and 10 pounds frequently; he
> can occasionally bend and stoop; he can climb stairs, but is precluded from
> climbing ladders[,] working at heights[,] or doing jobs that require balance;
> he cannot do work above shoulder level on either side; he can do
> occasional neck motion but should avoid extreme range of motion; he can
> maintain a fixed head position for 15 to 30 minutes occasionally, but at
> other times, his head should be comfortable for him; the claimant's work
> environment should be air-conditioned and free of excessive dust, odors,
> smoke, smog, fumes and other inhaled pollutants; he cannot operate

|   |   |
|---|---|
| 1 | motorized equipment; he cannot perform complex tasks over five to six |
| 2 | steps; he must work in a habituated setting with no demands for safety |
| 3 | operations; [and] he cannot perform fast paced work (such as rapid |
| 4 | assembly line work). |

AR 12-13, 65. The ALJ added that Newman "should do non-public work with no more than superficial contact with others." AR 13. The ALJ found that Newman is unable to perform any past relevant work, but that there are jobs that exist in significant numbers in the national economy that he can perform, such as shoe packager and inspector of surgical instruments. AR 17.

### C. Treating Psychiatrist

Newman contends that the ALJ improperly considered the opinion of his treating psychiatrist, Dr. Chatsuthiphan.

An opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). To reject an uncontradicted opinion of a treating physician, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn,* 495 F.3d at 632 (citations and quotation marks omitted). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart,* 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

When the ALJ declines to give a treating physician's opinion controlling weight, the ALJ considers several factors including the following: (1) length of the treatment

relationship and frequency of examination;[2] (2) nature and extent of the treatment relationship;[3] (3) the amount of relevant evidence supporting the opinion and the quality of the explanation provided; (4) consistency with record as a whole; and (5) the specialty of the physician providing the opinion. *See Orn*, 495 F.3d at 631; 20 C.F.R. § 404.1527(d)(1)-(6).

On February 6, 2007, Dr. Chatsuthiphan wrote a short letter To Whom It May Concern stating that Newman "has been a patient of mine and, in my best medical opinion, is totally disabled without consideration of any past or present drug and/or alcohol use," and that "[d]rug and/or alcohol use is not a material cause of [Newman's] disability." AR 395. The cover letter from Newman's attorney reflects that Dr. Chatsuthiphan's letter was sent to the Appeals Council. AR 4, 394. The Appeals Council concluded that the new information "does not provide a basis for changing the Administrative Law Judge's decision."[4] AR 2. To the extent the Appeals Council considered the new evidence, this court also considers it. *Lingenfelter v. Astrue*, 504

---

[2] "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source." 20 C.F.R. § 404.1527(d)(2)(I).

[3] "Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion." 20 C.F.R. § 404.1527(d)(2)(ii).

[4] If "new and material evidence is submitted," the Appeals Council "shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. §§ 404.970(b), 416.1470(b). The Appeals Council will then "make a decision or remand the case to an administrative law judge." 20 C.F.R. § 404.979. The Appeals Council "may affirm, modify or reverse the administrative law judge hearing decision." *Id.*

1  F.3d 1028, 1030 n.2 (9th Cir. 2007); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir.
2  2000).
3       On November 21, 2007, Dr. Chatsuthiphan completed a one-page Health Care
4  Professional Verification form for Newman in support of his application to use
5  Americans with Disabilities Act paratransit services.  AR 276.  Dr. Chatsuthiphan noted
6  that Newman was having vertigo/dizziness, asthma, and psychosis/thought disorder, all
7  of which were permanent disabilities.  *Id.*  He stated that Newman would never be able
8  to (a) travel independently to and from the nearest bus stop, up to 1/4 mile; (b) identify
9  the correct bus stop to board and get off; (c) go up and down three 10-inch steps using
10 a handrail if needed; (d) ask for, understand and carry out instructions to take a trip;
11 and/or (e) function without danger to himself or others on a public transit vehicle.  *Id.*
12      On April 15, 2009, Dr. Chatsuthiphan completed a one-page Medical Report for
13 the San Bernardino County Transitional Assistance Department.  AR 393.  Dr.
14 Chatsuthiphan diagnosed Newman with "major depression recurrent with psychosis," of
15 permanent duration.  *Id.*  Dr. Chatsuthiphan did not answer the question whether
16 Newman could perform full-time work, part-time work, or no work.  *Id.*
17      The ALJ discussed Dr. Chatsuthiphan's November 21, 2007 and April 15, 2009
18 opinions.  AR 16.  He assigned "little weight" to the November 21, 2007 opinion
19 because it was in the form of a check-list, inconsistent with the records as a whole, and
20 an accommodation to Newman.  *Id.*  The ALJ assigned "no weight" to the April 15, 2009
21 opinion because it was in the form of a check-list, unsupported by the objective medical
22 record, and inconsistent with "all other credible medical source opinions."  *Id.*
23      Newman argues that the ALJ did not identify any inconsistencies between Dr.
24 Chatsuthiphan's opinions and the objective medical evidence.  However, regarding
25 psychosis, the ALJ cited and quoted from the examining psychiatrist's report, which
26 found no objective evidence of psychosis and concluded that Newman attempted to
27 feign symptoms.  AR 15; *e.g.*, AR 260, 264; *see* AR 263 (claimant was neatly and
28 casually groomed, normally animated, coherent and organized thought processes,

relevant thought content, no bizarre or psychotic thought content). The ALJ gave the greatest weight to the State Agency review physician, Dr. Amado. AR 16. Dr. Amado diagnosed Newman with affective disorders and a history of alcohol abuse. AR 16, 293-07. Dr. Amado concluded Newman was not precluded from performing simple repetitive tasks in a nonpublic environment. AR 303, 309. The ALJ found that Dr. Amado's conclusion was supported by the record.[5] AR 16. With respect to physical symptoms, the ALJ reviewed the objective medical record regarding dizziness and asthma. AR 14-15, 260.

The ALJ articulated specific and legitimate reasons supported by substantial evidence in the record for discounting Dr. Chatsuthiphan's opinion.[6]

**D.  Step Five of the Sequential Analysis**

Newman contends the ALJ erred at step five because the jobs that the ALJ found Newman could perform are inconsistent with his RFC.

At Step Five, the Commissioner bears the burden of demonstrating there is other work in significant numbers in the national economy the claimant can do. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). If the Commissioner satisfies this burden, the claimant is not disabled and not entitled to disability benefits. If the

---

[5] Dr. Chatsuthiphan identified himself as being with Mesa counseling. Mesa's clinical records are in the Administrative Record. The ALJ did not find that the record was inadequate or ambiguous, and Newman's argument that the ALJ should have recontacted Dr. Chatsuthiphan is without merit.

[6] The February 6, 2007 letter, submitted to the Appeals Council, concerned the issue of whether Newman's alleged disability was related to his alcohol use. To warrant a remand, Newman must show that the new evidence is material to determining his disability. *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001). To be material, the new evidence must bear "'directly and substantially on the matter in dispute.'" *Id.* at 462 (citation omitted). In addition, Newman must demonstrate "a 'reasonable possibility' that the new evidence would have changed the outcome of the administrative hearing." *Id.* Newman has not made the requisite showing. Moreover, given that the ALJ did not find Newman to be disabled, the question of whether alcohol use was a material factor in his disability was not at issue.

Commissioner cannot meet this burden, the claimant is disabled and entitled to disability benefits. *Id.*

"There are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *Id.*

"[A]n ALJ may [not] rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the Dictionary of Occupational Titles [DOT]."[7] *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1234 (9th Cir. 2009). Social Security Ruling ("SSR") 00–4p requires the ALJ to "first determine whether a conflict exists" between the DOT and the vocational expert's testimony, and "then determine whether the VE's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]."[8] *Massachi*, 486 F.3d at 1153.

In evaluating the VE's explanation for the conflict, "an ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Johnson*, 60 F.3d at 1435. The ALJ's explanation is satisfactory if the ALJ's factual findings support a deviation from the DOT and "persuasive testimony of available job categories" matches "the specific requirements of a designated occupation with the specific abilities and limitations of the claimant." *Id.* at 1435. Remand may not be necessary if the procedural error is harmless, *i.e.*, when

---

[7] The DOT raises a rebuttable presumption as to job classification. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

[8] Social Security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989) (footnotes omitted).

there is no conflict or if the VE provided sufficient support for her conclusion to justify any potential conflicts. *Massachi*, 486 F.3d at 1154 n.19.

The ALJ found that Newman was precluded from doing work above shoulder level on either side and from operating motorized equipment. AR 12. The VE testified that Newman could perform work as a shoe packager or inspector of surgical instruments. AR 17, 48-51, 53-55. Based on the VE's testimony, the ALJ found that Newman could perform work that exists in significant numbers in the national economy such as shoe packager, DOT 920.687-166, and inspector of surgical instruments, DOT 712.684-010. AR 17-18,[9] 46-55.

Newman argues that the DOT describes the shoe packager position as requiring constant reaching (2/3 or more of the time), and the inspector of surgical instruments as requiring frequent reaching (1/3 to 2/3 of the time). JS 15-16; DOT 920.687-166 (shoe packer), 712.684-010 (inspector of surgical instruments). He also argues the inspector of surgical instruments position requires operating motorized equipment. JS 16; DOT 712.684-010.[10] The Commissioner argues that a VE's testimony "can trump the DOT,"

---

[9] The ALJ stated that "[p]ursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." AR 18.

[10] The job description for inspector of surgical instruments requires performance of any of the following duties:
   Performs any combination of following tasks to assemble surgical garments and personal safety devices, such as colostomy pouches, trusses, belts, cervical collars, hosiery, and back, knee, wrist, elbow, and ankle braces: Reads work order to determine number and type of parts required to assemble garment. Measures and cuts required pieces, using ruler, templates, knife, and electric or hand shears. Punches holes in material, using punch press or hand punch. Attaches fasteners, such as eyelets or snaps, using rivet, snap-fastening, or eyelet machine. Grinds and polishes parts, using grinding wheel. Bends metal stays (springs) to specified curvature, using bending machine. Applies latex coating to parts or specified areas of parts, using coating machine. Fits and fastens parts together, such as straps, buckles, pads, belts, and stays to assemble garment, using handtools, gluing equipment, and machines, such as punch

and that Newman's assertions that the shoe packager and inspector of surgical instruments jobs "would require 'above shoulder level work' and 'operation of motorized equipment' are mere speculation." JS 20.

The DOT describes "reaching" as "extending hand(s) and arm(s) in any direction." SSR 85-15, 1985 WL 56857, at *7. The Commissioner argues that the word "reaching" does not necessarily require overhead reaching. This argument was addressed in *Prochaska v. Barnhart*, 454 F.3d 731 (7th Cir. 2006). In *Prochaska*, the claimant argued her RFC included a limitation that she could "occasionally reach above shoulder level" whereas the job identified by the VE required "reaching" frequently under the DOT. *Id.* at 736. The Seventh Circuit concluded that "there is an unresolved potential inconsistency in the evidence that should have been resolved." *Id.* (citation omitted). "It is not clear to us whether the DOT's requirements include reaching above shoulder level, and this is exactly the sort of inconsistency the ALJ should have resolved with the expert's help." *Id.* The language of the *Prochaska* decision was quoted by the Ninth Circuit in *Massachi v. Astrue*, 486 F.3d 1149, 1153 & n.13 (9th Cir. 2007); *see also Mkhitaryan v. Astrue*, 2010 WL 1752162, at *3 (C.D. Cal. 2010) ("As defined in the [Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles], the plain meaning of 'reaching' encompasses above-the-shoulder reaching.").

Here, the VE provided sufficient support to justify deviation from the DOT as to "reaching" with respect to the job of bagger (AR 55),[11] but was not asked about shoe packager or inspector of surgical instruments. Nor was the VE asked about a potential

---

    press, riveting machine, heat-sealing machine, and sewing machine. Weaves elastic thread into outer edges of garments, such as knee, wrist, and elbow braces, to increase elasticity. Places completed garments in boxes or plastic bags for packaging.
DOT 712.684-010.

    [11] The ALJ's findings did not list bagger as a representative occupation.

1  conflict between a RFC that precluded operation of motorized equipment and the job of
2  inspector of surgical instruments.
3        Given a possible conflict between the VE's testimony and the DOT, the court
4  cannot determine whether the ALJ properly relied on the VE's testimony.  *Massachi*,
5  486 F.3d at 1153-54 & n.19.  The remedy under these circumstances is a remand so
6  the ALJ may conduct the appropriate inquiries.  *Id.* at 1154.

## IV.
## CONCLUSION

IT IS HEREBY ORDERED that the decision of the Commissioner is reversed and the matter remanded for proceedings consistent with this opinion.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: May 23, 2012

                                        ALICIA G. ROSENBERG
                                        United States Magistrate Judge